**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**THE EVERYTHING EDITIONS LLC,**
**a Florida limited liability company**
**d/b/a THE DOG BOOK,**

*Plaintiff*,

CASE NO. ______________________

v.

**REMUS COLLECTION, INC., a Delaware corporation; RYAN ROUCHE, an individual; NEIL AZOUZ, an individual; LANCELOT MORIN, an individual; and JOHN DOE 1 a/k/a "FIX MY BRAND" a/k/a "ASHMIT ASHMIT,"**

*Defendants*.
________________________________________/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, The Everything Editions LLC, a Florida limited liability company doing business as The Dog Book ("**Plaintiff**" or "**The Dog Book**"), sues Defendants, Remus Collection, Inc. ("**Remus**"), Ryan Rouche ("**Rouche**"), Neil Azouz ("**Azouz**"), Lancelot Morin ("**Morin**"), and John Doe 1, and alleges as follows:

## INTRODUCTION

1. This case is not about competition. It is about a competitor that, having failed to drive a rival from the market by lawful means, hired a man to destroy that rival's business by fraud.

2. Plaintiff and Defendant Remus sell photographic coffee table books about dog breeds. In August 2026, Remus accused Plaintiff of infringing its intellectual property. Plaintiff answered that accusation in writing on August 18, 2026. Remus never sued. It never registered a copyright. It never filed an opposition. Instead, it went to Instagram.

3. In early September 2026, Rouche — a principal of Remus — published a scripted message to his Instagram followers identifying Plaintiff's accounts by hyperlink, labeling them "**DOG BOOK SCAM**," and instructing his followers to report those accounts to Meta "for scam/fraud." Two additional accounts published the identical text, word for word. One of them added: "**Thank you to everyone helping my friends report them**." On September 7, 2026, Instagram suspended Plaintiff's account.

4. Plaintiff's counsel served a cease and desist on September 8, 2026. That same afternoon, Remus's counsel responded in writing that Remus had agreed to stop — specifically, that Remus would "refrain from publishing **or causing to be published**" such posts, "or **soliciting reports** against The Dog Book on that basis." Plaintiff relied on that agreement and closed the matter.

5. Remus did not stop. It went underground.

6. Defendants retained John Doe 1, an individual who sells social media account takedowns for a fee. Between October 8 and October 9, 2026, Doe filed **six copyright infringement notices with Meta against Plaintiff's Instagram content**. Each notice identified the rights owner as "**The dog book**" — Plaintiff's own name. Each asserted, in the first person, that the complainant was "the original creator and rightful copyright owner" of the content. Each was false. The content taken down was Plaintiff's own work, posted to Plaintiff's own account, bearing Plaintiff's own copyright notice in the caption.

7. Defendants did not merely cause false takedown notices to be filed. They caused a third party to impersonate Plaintiff before Meta in order to have Plaintiff's own work removed from Plaintiff's own account.

8. On October 13, 2026, Doe contacted Plaintiff directly. He stated that he was being paid $1,000 to ban Plaintiff's Facebook and Instagram pages. He identified Rouche, Azouz, and Morin as the persons paying him and Remus as his "regular clients." He demanded that Plaintiff voluntarily deactivate its own commercial pages for thirty hours so that he could collect his fee, and warned that if Plaintiff refused, he would "**continue to strike copyright until page got down**." He forwarded messages from the person directing him reading "**I need them Down fast**" and "**THE PAYEMNT IS FOR DEFINTIVE BAN**."

9. The campaign succeeded. Plaintiff has lost account after account. Each time it rebuilds, the new account is reported and disabled. Plaintiff's original handle was taken by a third party within days of its deactivation. And because Plaintiff has now been repeatedly reported as a "scam" and a "fraud," certain platforms affirmatively warn prospective customers who visit Plaintiff's pages that the account has been reported for fraud — a warning generated by Defendants' own false reports, displayed to the very consumers Plaintiff exists to reach.

10. That outcome was the object of the exercise. Defendants did not act to protect intellectual property. They acted to contaminate a competitor's brand at its source, during its launch, so that it could not recover. Plaintiff's losses exceed $500,000 and continue to accrue.

11. Plaintiff brings this action under the Digital Millennium Copyright Act, the Lanham Act, and Florida law, and seeks compensatory, statutory, and punitive damages, attorneys' fees, declaratory relief, and a permanent injunction.

## JURISDICTION AND VENUE

12. This Court has original and exclusive subject matter jurisdiction over Count I pursuant to 28 U.S.C. §§ 1331 and 1338(a), because that claim arises under the Copyright Act of 1976, 17 U.S.C. § 101 et seq., including 17 U.S.C. § 512(f).

13. This Court has subject matter jurisdiction over Count II pursuant to 28 U.S.C. §§ 1331 and 1338(a), because that claim arises under the Lanham Act, 15 U.S.C. § 1051 et seq.

14. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III.

15. This Court has personal jurisdiction over Remus because Remus maintains its principal place of business at 5050 Biscayne Boulevard, Suite 201, Miami, Florida 33137, and conducts continuous and systematic business within this District.

16. This Court has personal jurisdiction over Rouche, Azouz, and Morin pursuant to § 48.193, Fla. Stat., because each operated, conducted, engaged in, or carried on a business or business venture in Florida; committed tortious acts within Florida; and caused injury within Florida arising from acts committed outside Florida while engaged in solicitation activities within Florida. The exercise of jurisdiction comports with constitutional due process because each Defendant purposefully directed his conduct at a Florida business, knowing that the injury would be suffered in Florida.

17. This Court has personal jurisdiction over John Doe 1 pursuant to § 48.193, Fla. Stat., because he committed tortious acts directed at and causing injury to a Florida business, including the submission of fraudulent notices intended to and in fact causing the disabling of a Florida business's commercial accounts.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Remus resides in this District and because a substantial part of the events and omissions giving rise to Plaintiff's claims, and substantially all of the resulting injury, occurred in this District.

## THE PARTIES

19. Plaintiff The Everything Editions LLC is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida. Plaintiff conducts business under the fictitious name "The Dog Book," and owns and operates the business conducted under that name. Plaintiff is the registrant and holder of the Instagram and Facebook accounts identified herein; is the merchant of record through which The Dog Book's customer orders are received and its revenue is collected; and has funded the manufacture of The Dog Book's inventory, including payment of production costs to The Dog Book's manufacturer.

20. Defendant Remus is a Delaware corporation with its principal place of business at 5050 Biscayne Boulevard, Suite 201, Miami, Florida 33137, as stated in its own filings with the United States Patent and Trademark Office. Remus sells photographic coffee table books featuring dog and cat breeds through the website remus-collection.com.

21. Defendant Rouche is an individual and a founder, principal, officer, and/or controlling person of Remus. Rouche personally authored and published the Instagram publications described below through the account @ryanrouche.

22. Defendant Azouz is an individual and a founder, principal, officer, and/or controlling person of Remus.

23. Defendant Morin is an individual and a founder, principal, officer, and/or controlling person of Remus. Morin published the Instagram publications described below through the account @lano_mrn.

24. Defendant John Doe 1 is an individual whose true legal name is presently unknown to Plaintiff, who has represented himself to Plaintiff under the Facebook identity "Ashmit Ashmit" and the Telegram identity "Fix My Brand" (@fmbworks), and who operates the Telegram channel

"FMB Vault" (@fmbvault). Doe advertises and sells, for a fee, services causing the suspension and removal of social media accounts. Plaintiff will amend this Complaint to state Doe's true name when it is ascertained through discovery.

25. At all material times, each Defendant acted as the agent, servant, employee, co-conspirator, and/or joint venturer of each other Defendant, and acted within the course and scope of that relationship and with the knowledge, authorization, ratification, and consent of the others.

## CONDITIONS PRECEDENT

26. On October 14, 2026, more than five days before the filing of this Complaint, Plaintiff served written notice upon Defendants, through counsel, specifying the false and defamatory statements alleged herein, in satisfaction of § 770.01, Fla. Stat. ***A true and correct copy of that notice is attached as Exhibit A***.

27. Defendants did not respond. Defendants have published no correction, apology, or retraction, and have withdrawn none of the notices described below.

28. All conditions precedent to the maintenance of this action have been performed, have occurred, or have been waived or excused.

## GENERAL ALLEGATIONS

### A. Plaintiff's Business.

29. Plaintiff designs and sells a line of breed-specific photographic coffee table books. Each volume is a cloth-bound hardcover presented in a rigid slipcase, sold at a retail price of $120.00, and marketed to collectors and dog owners.

30. Plaintiff's books are illustrated with original photographs commissioned or licensed by Plaintiff. Plaintiff authored its own marketing copy, captions, and social media content.

31. Within the first two weeks of sales, Plaintiff received customer pre-orders exceeding $100,000. Plaintiff has deployed in excess of $100,000 into manufacturing, supply chain, freight, warehousing, packaging, and order fulfillment, and maintains a complete and operational assembly, order-processing, and shipping capability.

32. Plaintiff's Instagram and Facebook accounts were, at all material times, Plaintiff's principal channels for customer acquisition, product marketing, order communication, and brand presence. Plaintiff's business model depends on those channels. Defendants knew that.

**B. <u>Remus's Demand and Plaintiff's Response.</u>**

33. On August 14, 2026, counsel for Remus served a nine-page demand letter on Plaintiff asserting claims for copyright infringement, trade dress infringement, false designation of origin, and unfair competition.

34. On August 18, 2026, Plaintiff responded in writing through counsel. Plaintiff disputed each of the asserted claims, noted that Remus had identified no copyright registration, no issued trademark registration, and no specific protected work, and demanded that Remus identify the photographer and date of creation of each image it claimed, together with whether its website copy was authored by a human being or generated by an artificial intelligence tool.

35. Remus never answered those questions. Remus never filed suit. Remus never initiated any proceeding of any kind against Plaintiff. Instead, approximately two weeks later, Remus took its grievance to Instagram.

**C. <u>The First Campaign: Solicited Mass Reporting.</u>**

36. Beginning on or about September 6, 2026, Rouche published a series of stories to his Instagram account, @ryanrouche, stating in relevant part: "*[A] company has copied our*

*concept and creative direction to sell their own books. . . . Legal action is already underway, but you can also support us by reporting their Instagram and Facebook pages.*"

37. The same publication continued: "*Here's the Instagram account to report for scam/fraud:*" above a hyperlink to Plaintiff's account displayed as "**DOG BOOK SCAM**." A companion story directed followers to "*[t]he Facebook account to report for scam/fraud*" under a hyperlink displayed as "**DOG BOOK SCAM FACEBOOK**," accompanied by a screenshot identifying Plaintiff's page by name, logo, and follower count.

38. The publication was not spontaneous. It was scripted and distributed for republication. The Instagram account @lara_erea published the identical text — every sentence, every phrase, every line break — altered only to substitute the link label. The account @lano_mrn published the same script in lightly edited form, accompanied by a purpose-built side-by-side graphic captioned "REMUS" and "THE DOG BOOK" and placed above buttons reading "Report for Scam / Fraud" and "Report Facebook."

39. The account @lara_erea added, in her own words: "**Thank you to everyone helping my friends report them**."

40. At the time these statements were published, each was false. Plaintiff was not a scam. Plaintiff was not a fraud. Plaintiff had committed no criminal act. Plaintiff had taken real orders from real customers and had invested six figures in the capacity to fulfill them. No legal action against Plaintiff had been commenced in any court or tribunal.

41. On September 7, 2026, Instagram suspended Plaintiff's account, @thedogbookcollection, citing its Community Standards on account integrity.

**D. The September 8, 2026, Agreement.**

42. On September 8, 2026, at 2:52 p.m., Plaintiff's counsel served a cease and desist letter upon Remus's counsel concerning the foregoing publications.

43. At 3:35 p.m. that same afternoon, Remus's counsel responded in writing. ***A true and correct copy of that email is attached as Exhibit B***. It states in relevant part:

> "Remus has agreed to remove any active social media posts under its control that characterize The Dog Book as a 'scam' or 'fraud,' or that otherwise request that others report The Dog Book on that basis. Remus has also agreed that, going forward, it will refrain from publishing or causing to be published social media posts characterizing The Dog Book as a 'scam' or 'fraud,' or soliciting reports against The Dog Book on that basis."

44. That writing constituted an offer of agreement, supported by consideration consisting of Plaintiff's forbearance from filing suit, which Plaintiff accepted by forbearing. Plaintiff relied upon that agreement, refrained from filing suit, and closed the matter.

45. By its express terms, Remus undertook not merely to cease its own publications, but to refrain from **causing such publications to be made** and from **soliciting reports** against Plaintiff. Retaining and paying a third party to file reports against Plaintiff is the precise conduct that undertaking prohibits.

**E. The Breach: The Covert Campaign.**

46. On September 9, 2026 — one day after Remus agreed to stop — Instagram suspended Plaintiff's successor account, @thedogbook__collection.

47. Plaintiff rebuilt. On September 24, 2026, Instagram suspended the rebuilt account.

48. That pattern has repeated continuously. Each successor account Plaintiff has opened has been reported and disabled. ***Plaintiff's correspondence from Meta documenting these suspensions is attached as Exhibit C***.

**F. The Six Fraudulent Copyright Notices.**

49. Between October 8 and October 9, 2026, six separate notices of claimed copyright infringement were submitted to Meta against Plaintiff's Instagram content. Meta removed or disabled access to the targeted content upon each notice. ***Meta's correspondence identifying each notice is attached as Exhibit D***.

50. The notices are identified as follows:

(a) **Report No. 1105774695183604** — October 8, 2026, 7:06 p.m. — reporting address majduri@hotmail.com — targeting Plaintiff's Yorkshire Terrier post;

(b) **Report No. 2080049702651722** — October 9, 2026, 3:31 p.m. — reporting address majduri@hotmail.com — targeting Plaintiff's Dachshund reel;

(c) **Report No. 1713421229723384** — October 9, 2026, 3:48 p.m. — reporting address majduri@hotmail.com;

(d) **Report No. 1726787445635171** — October 9, 2026, 3:49 p.m. — reporting address namak6570@outlook.com;

(e) **Report No. 3235442829993651** — October 9, 2026, 4:20 p.m. — reporting address majduri@hotmail.com — targeting Plaintiff's Cocker Spaniel post; and

(f) **Report No. 4796551937299620** — October 9, 2026, 4:44 p.m. — reporting address raja2340@hotmail.com — targeting Plaintiff's Jack Russell Terrier post.

51. Every one of the six notices identifies the Rights Owner as **"The dog book"** — Plaintiff's own trade name.

52. Every one of the six notices asserts, in the first person, that the complaining party is the author and owner of the targeted content. Representative language includes: "*I am the original creator and rightful copyright owner of this post. The reported Instagram account has copied and reposted my content without my permission or authorization.*"

53. Every one of those representations was false, and was known by its maker to be false when made.

54. The content targeted by the notices was Plaintiff's own original content, created by or for Plaintiff, published to Plaintiff's own Instagram account, and bearing Plaintiff's own copyright notice within the caption: "© Dog Book Collection | All Rights Reserved. Unauthorized reproduction or redistribution of our original content is prohibited."

55. No Defendant owned any copyright in the targeted content. No Defendant held any license, assignment, or authorization. No Defendant had any good-faith basis to believe otherwise.

56. The reporting addresses majduri@hotmail.com, namak6570@outlook.com, and raja2340@hotmail.com were created or controlled by John Doe 1 for the purpose of submitting the notices, and at least one further electronic mail address incorporating Plaintiff's trade name was created for the purpose of impersonating Plaintiff in connection with this campaign.

57. Each notice was submitted through Meta's notice-and-takedown process established under 17 U.S.C. § 512(c), which requires that the complaining party attest to the accuracy of the notification.

**G. <u>Doe's Admissions and Extortion Demand.</u>**

58. On or about October 13, 2026, John Doe 1 contacted Plaintiff directly through Plaintiff's Facebook page under the name "Ashmit Ashmit." The conversation continued on Telegram under the identity "Fix My Brand" (@fmbworks). ***True and correct copies of both exchanges are attached as Exhibits E and F***.

59. Doe stated: "**One guy need to ban your fb and ig both.**" "**He his paying me 1k doller**." "**I also strike cpr on your accounts i will take all back and i have a good plan if you agree**."

60. Doe then demanded that Plaintiff disable its own commercial pages so that he could be paid: "**I need deactivate of your both pages of 30 hour and after that i will get money and**

**i will send your details and take my all copyright strikes back . . . and if you can't i will continue to strike copyright until page got down boss**."

61. Doe further stated: "**You do 18 hour i dont get my payment**"; "**I will take down your ig now when you get in your mood let me know after your ig burn**"; and, referring to Defendants, "**i am risking my job over speed and you they are my regular clints**" and "**[i]f they got this also they will cancle all my deals**."

62. Doe forwarded to Plaintiff messages he had received from the person directing his work, which read: "**There are also new accounts boss / Dogbook / Etc...**"; "**I need them Down fast**"; and "**THE PAYEMNT IS FOR DEFINTIVE BAN / Not for this**."

63. When asked to identify the persons paying him, Doe identified Rouche and Azouz by name, and confirmed the involvement of Morin and of Remus Collection, Inc.

64. Doe's Telegram channel, "FMB Vault" (@fmbvault), publicly advertises his services. Its biography reads "Top Tier Social Expert | Handled over 90k$ + Deals | Trusted by Many." Its posts offer paid Instagram unbans and advertise the ability to "Cover Fraud and Community Standards Cases."

65. Doe is, by his own description and advertisement, a commercial vendor of social media account suspensions. Defendants retained him for that purpose.

**H. <u>Seizure of Plaintiff's Handle.</u>**

66. Within days after Instagram disabled Plaintiff's account @thedogbookcollection, that handle was taken by a third party.

67. On information and belief, the account now holding Plaintiff's former handle lists backup contact information, including an electronic mail address and telephone number, matching

contact information published by or associated with Remus and its personnel. On information and belief, Defendants caused Plaintiff's handle to be disabled in order to acquire it.

## I. The Continuing Harm: Contamination of Plaintiff's Brand.

68. Defendants' conduct did not merely remove Plaintiff from Instagram. It marked Plaintiff.

69. As a direct result of the volume of false reports characterizing Plaintiff as a "scam" and a "fraud," Instagram now displays affirmative warnings to users who attempt to follow Plaintiff's accounts and to users who click a link directing them to those accounts. Those warnings advise the user that the account has been reported for fraud or as a scam, and require the user to acknowledge the warning before proceeding to Plaintiff's page. Those warnings are generated by and derived from Defendants' own false reports.

70. The consumers who see those warnings are the precise consumers Plaintiff exists to reach. A prospective purchaser who is told by the platform itself that a merchant has been reported for fraud will not purchase. That is the injury Defendants intended.

71. Defendants' conduct has further caused Meta's automated enforcement systems to associate Plaintiff's content, branding, logo, and copy with prior violations, such that each successor account Plaintiff createss is flagged and disabled upon publishing Plaintiff's own legitimate content. Plaintiff cannot presently maintain a stable commercial presence on the platforms on which its business depends.

72. Defendants' conduct is continuing. Defendants have not withdrawn the six notices. Defendants have not retracted the reports. Defendants did not respond to Plaintiff's notice of October 14, 2026.

73. Defendants' campaign has not ceased. It has escalated, and changed form. In recent weeks Plaintiff's Facebook accounts have been reported in excess of four hundred times on the asserted ground that those accounts display sexually explicit content.

74. Plaintiff's accounts contain no sexually explicit content of any kind, and never have. Plaintiff's accounts display photographs of dogs and of photographic books about dogs, together with product information and ordinary commercial marketing copy. Every report asserting otherwise is false, and is known by its maker to be false.

75. The volume, timing, and uniformity of those reports establish that they are not the independent judgments of offended consumers encountering Plaintiff's content in the ordinary course. They are a coordinated campaign of knowingly false reporting, of the same character, by the same means, and directed to the same end as the conduct alleged above: the permanent disabling of Plaintiff's commercial presence on the platforms through which it sells.

76. A false report that a merchant's pages display sexually explicit content is calculated to produce consequences beyond suspension. It associates Plaintiff's brand and its content with a category of material that advertisers, payment processors, retail partners, and consumers will not tolerate; it subjects Plaintiff to the most severe tier of platform enforcement, from which reinstatement is substantially more difficult to obtain; and it compounds the contamination of Plaintiff's brand that Defendants set out to achieve.

**J. <u>Damages.</u>**

77. Plaintiff has suffered lost sales, lost profits, lost customers, lost goodwill, diminished brand value, the destruction of its social media audience and algorithmic standing, the loss of its original handle, remediation and rebuilding costs, impairment of its investment in fulfillment capacity, and costs incurred in responding to Defendants' conduct.

78. Plaintiff's losses exceed $600,000 and continue to accrue daily. Plaintiff will prove the full measure of those damages at trial.

79. Defendants acted intentionally, maliciously, and in conscious and deliberate disregard of Plaintiff's rights, and with the specific intent to injure Plaintiff's business. Plaintiff is entitled to punitive damages.

**COUNT I**
**VIOLATION OF 17 U.S.C. § 512(f)**
**MISREPRESENTATION IN NOTIFICATIONS OF CLAIMED INFRINGEMENT**
*(Against All Defendants)*

80. Plaintiff realleges and incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

81. Section 512(f) of Title 17 provides that any person who knowingly materially misrepresents that material or activity is infringing shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material claimed to be infringing.

82. Each of the six notices identified above constituted a notification of claimed infringement submitted to a service provider, Meta Platforms, Inc., under 17 U.S.C. § 512(c).

83. Each notice represented that Plaintiff's content infringed the copyright of the complaining party. Each such representation was a material misrepresentation.

84. Each notice further represented that the complaining party was "the original creator and rightful copyright owner" of the targeted content, and identified the rights owner as "The dog book." Those representations were materially false.

85. The maker of each notice knew those representations were false when made. No subjective good-faith belief in infringement was possible: the content targeted was Plaintiff's own,

published on Plaintiff's own account, and bore Plaintiff's own copyright notice. A party who submits a notice in the name of the very entity whose content he is targeting does not act under any good-faith belief that his own copyright has been infringed.

86. Meta relied upon those misrepresentations and, in reliance, removed or disabled access to each item of Plaintiff's content identified in the notices.

87. Doe made, submitted, or caused the submission of each notice. Remus, Rouche, Azouz, and Morin retained, directed, paid, and ratified Doe's conduct, and each notice was submitted as their agent and at their direction and for their benefit. Each Defendant is therefore liable for the misrepresentations contained in each notice.

88. As a direct and proximate result, Plaintiff has incurred damages, including lost revenue, lost goodwill, remediation costs, the cost of responding to the notices, and attorneys' fees and costs, in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for damages, costs, and attorneys' fees pursuant to 17 U.S.C. § 512(f); injunctive relief; and such further relief as this Court deems just and proper.

**COUNT II**
**FALSE ADVERTISING AND COMMERCIAL DISPARAGEMENT**
**15 U.S.C. § 1125(a)(1)(B)**
*(Against All Defendants)*

89. Plaintiff realleges and incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

90. Defendants made false and misleading statements of fact concerning Plaintiff's business, goods, and commercial activities, including that Plaintiff's business is a "scam" and a "fraud"; that Plaintiff copied Defendants' protected work; that legal action was already underway against Plaintiff; and that Plaintiff's own content infringed the copyright of another.

91. These statements constitute commercial advertising and promotion. They are commercial speech, made by direct competitors of Plaintiff and by their paid agent, for the commercial purpose of influencing consumers to purchase Remus's books rather than Plaintiff's and of removing Plaintiff from the marketplace, and were disseminated to the relevant purchasing public and to the platforms through which Plaintiff reaches that public.

92. The statements were literally false or, in the alternative, were misleading and likely to deceive a substantial segment of the relevant audience.

93. The deception was material. Whether a merchant is a criminal enterprise is dispositive of a consumer's purchasing decision, particularly in a pre-order transaction in which payment precedes delivery.

94. Plaintiff's goods travel in interstate commerce, and Defendants' statements were disseminated in interstate commerce.

95. Plaintiff has been injured in its commercial interests in sales and business reputation as a direct and proximate result. Plaintiff's injuries are of the type the Lanham Act was enacted to prevent, and flow directly from Defendants' deception of consumers and of the platform operators through which Plaintiff reaches those consumers.

96. Defendants' conduct was willful and deliberate, rendering this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for actual damages, Defendants' profits, enhanced damages, costs and attorneys' fees pursuant to 15 U.S.C. § 1117(a), injunctive relief pursuant to 15 U.S.C. § 1116, and such further relief as this Court deems just and proper.

**COUNT III**
**BREACH OF CONTRACT**
*(Against Remus Collection, Inc.)*

97. Plaintiff realleges and incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

98. On September 8, 2026, Remus, acting through counsel, agreed in writing that it would refrain from publishing or causing to be published social media posts characterizing The Dog Book as a "scam" or "fraud," and from soliciting reports against The Dog Book on that basis. That agreement was made with and for the benefit of The Dog Book, the business Plaintiff owns and operates and under whose name Plaintiff conducts business, and was negotiated in response to the cease and desist letter served on The Dog Book's behalf earlier that afternoon.

99. That agreement was supported by valid consideration, consisting of Plaintiff's forbearance from instituting litigation that was then imminent and had been formally noticed.

100. Plaintiff accepted the agreement by forbearing, and performed all obligations required of it.

101. Remus materially breached that agreement by retaining, directing, and paying a third party to submit reports and notices against Plaintiff's accounts — conduct squarely within the undertaking not to "caus[e] to be published" such reports and not to "solicit[] reports against The Dog Book on that basis."

102. As a direct and proximate result of that breach, Plaintiff has suffered damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Remus Collection, Inc. for compensatory damages, interest, costs, and such further relief as this Court deems just and proper.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND ADVANTAGEOUS BUSINESS RELATIONSHIPS

*(Against All Defendants)*

103. Plaintiff realleges and incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

104. Plaintiff maintained a contractual relationship with Meta Platforms, Inc. governing its Instagram and Facebook accounts; contractual relationships with customers who had placed pre-orders; and advantageous business relationships with an identifiable class of prospective customers reached through those accounts.

105. Defendants knew of each of those relationships. Defendants located, screenshotted, and hyperlinked Plaintiff's accounts; identified them by name to third parties; and directed reports and notices specifically at them.

106. Defendants intentionally and unjustifiably interfered with those relationships by publishing false accusations of criminal conduct, by soliciting third parties to report Plaintiff's accounts, and by retaining and paying Doe to submit six false notices of claimed copyright infringement.

107. Defendants' conduct was not privileged. A competitor's interest in competition affords no privilege to procure the suspension of a rival's commercial accounts through false accusations of crime and fraudulent copyright notices submitted in the rival's own name.

108. That interference caused the suspension and disabling of Plaintiff's accounts, the removal of Plaintiff's content, the loss of Plaintiff's handle, and the loss of sales, customers, and goodwill.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages, interest, costs, injunctive relief, and such further relief as this Court deems just and proper.

**COUNT V**
**DEFAMATION PER SE**
*(Against All Defendants)*

109. Plaintiff realleges and incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

110. Defendants published to third parties, including to Meta and to the consuming public, statements of fact concerning Plaintiff, including that Plaintiff's business is a "scam" and a "fraud," and that Plaintiff had misappropriated the copyrighted work of another.

111. The statements upon which this Count is predicated are those specified in the written notice served upon Defendants on October 14, 2026, a true and correct copy of which is attached as Exhibit A.

112. Those statements were false.

113. The statements impute to Plaintiff the commission of a criminal offense, and are injurious to Plaintiff in its trade, business, and profession. The statements are therefore defamatory per se, and damages are presumed.

114. Defendants published the statements with knowledge of their falsity or with reckless disregard for the truth, and with actual and express malice, for the purpose of injuring a competitor.

115. Defendants' statements continue to be republished, in substance, by the platforms themselves in the form of warnings displayed to consumers who visit Plaintiff's pages advising

that the account has been reported for fraud. That republication was the intended and foreseeable consequence of Defendants' conduct.

116. Plaintiff suffered actual damages, including lost sales, lost goodwill, and the loss of its social media accounts and handle.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory, presumed, and punitive damages, interest, costs, injunctive relief, and such further relief as this Court deems just and proper.

**COUNT VI**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, § 501.201 et seq., FLA. STAT.**
*(Against All Defendants)*

117. Plaintiff realleges and incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

118. At all material times, Defendants were engaged in trade or commerce within the meaning of § 501.203(8), Fla. Stat.

119. Defendants' conduct constitutes unfair methods of competition and unconscionable, deceptive, and unfair acts and practices within the meaning of § 501.204(1), Fla. Stat. Publishing false accusations that a competitor is a criminal enterprise; falsely representing that legal action is pending; soliciting third parties to submit false reports; and retaining a paid contractor to submit fraudulent copyright notices in the competitor's own name offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers and competitors alike.

120. Plaintiff is an aggrieved party within the meaning of § 501.211, Fla. Stat., and suffered actual damages proximately caused by Defendants' conduct.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for actual damages, declaratory and injunctive relief pursuant to § 501.211, Fla. Stat., attorneys' fees and costs pursuant to § 501.2105, Fla. Stat., and such further relief as this Court deems just and proper.

**COUNT VII**
**CIVIL CONSPIRACY**
*(Against All Defendants)*

121. Plaintiff realleges and incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

122. Defendants, and others presently unknown, agreed among themselves to accomplish an unlawful purpose, and to accomplish a lawful purpose by unlawful means: namely, the destruction of Plaintiff's social media presence and commercial viability through false accusations of criminal conduct, solicited mass reporting, and fraudulent notices of claimed copyright infringement.

123. The existence of that agreement is evidenced by, among other things, the publication of identical scripted text across three coordinated Instagram accounts; the retention and payment of Doe; Doe's statements identifying Rouche, Azouz, and Morin as the persons paying him and Remus as his "regular clients"; and the messages Doe forwarded from the person directing his work.

124. Each Defendant committed overt acts in furtherance of the conspiracy, including publishing the statements, distributing the script, retaining and paying Doe, and submitting the six notices.

125. Plaintiff suffered damage as a direct and proximate result.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages, interest, costs, and such further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff The Everything Editions LLC d/b/a The Dog Book respectfully requests that this Court enter judgment in its favor and against Defendants, and award the following relief:

(i) Compensatory damages in an amount to be proven at trial, presently exceeding $600,000.00;

(ii) Damages, costs, and attorneys' fees pursuant to 17 U.S.C. § 512(f);

(iii) Defendants' profits, enhanced damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117(a);

(iv) Presumed damages on Plaintiff's claim for defamation per se;

(v) Attorneys' fees and costs pursuant to § 501.2105, Fla. Stat.;

(vi) Punitive damages;

(vii) A permanent injunction restraining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from: (a) submitting or causing to be submitted any report, complaint, or notice of claimed infringement concerning Plaintiff's accounts or content; (b) soliciting, encouraging, procuring, or paying any person to do so; (c) publishing any statement that Plaintiff's business is a scam or a fraud; and (d) representing that legal action is pending against Plaintiff where none is;

(viii) An order directing Defendants to withdraw and retract each of the six notices identified herein through Meta's retraction channel, and to instruct every person they solicited to withdraw any report submitted against Plaintiff;

(ix) An order directing Defendants to relinquish and transfer to Plaintiff the Instagram handle @thedogbookcollection and any other handle incorporating Plaintiff's trade name;

(x) Pre-judgment and post-judgment interest; and

(xi) Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable as of right.

Dated: November 5, 2026.

Respectfully submitted,

**NUNEZ & FLEISCHER, P.A.**
*Counsel for Plaintiff*
303 SW 6th Street
Fort Lauderdale, Florida 33315
Telephone: (954) 463-4972

By: */s/ Joshua L. Cohen*
**JOSHUA L. COHEN, ESQ.**
Florida Bar No. 1035422
jcohen@nunezandfleischer.com

## INDEX OF EXHIBITS

| | |
|---|---|
| **Exhibit A** | Notice pursuant to § 770.01, Fla. Stat., and final demand, October 14, 2026 |
| **Exhibit B** | Email of David Benaim, Esq., September 8, 2026, 3:35 p.m. |
| **Exhibit C** | Meta and Instagram account suspension correspondence, September 7, 2026 – October 2026 |
| **Exhibit D** | Meta copyright removal notices, Report Nos. 1105774695183604; 2080049702651722; 1713421229723384; 1726787445635171; 3235442829993651; 4796551937299620 |
| **Exhibit E** | Facebook message thread with John Doe 1 (“Ashmit Ashmit”), October 13, 2026 |
| **Exhibit F** | Telegram message thread with John Doe 1 (“Fix My Brand,” @fmbworks), October 13, 2026, and associated channel profile (@fmbvault) |
| **Exhibit G** | Instagram story publications of @ryanrouche, @lara_erea, and @lano_mrn, September 2026 |